**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Joseph CLUTTERBUCK, Defendant-Appellant.**

**No. 23598.**

United States Court of Appeals
Ninth Circuit.

Jan. 20, 1970.

James E. Hogan (argued), Davis, Cal., William H. Lally, of Lally, Martin & Chidlaw, Louis N. Desmond, of Desmond, Miller, Desmond & West, Sacramento, Cal., for defendant-appellant.

James J. Simonelli (argued), Asst. U. S. Atty., John P. Hyland, U. S. Atty., for plaintiff-appellee.

Before MADDEN, Judge of the Court of Claims, and MERRILL and CARTER, Circuit Judges.

MERRILL, Circuit Judge.

Appellant was convicted of theft of Government property in excess of $100 in value, in violation of 18 U.S.C. § 641.[1] He was given concurrent sentences of ten years on each of four counts and on one of the counts was fined $10,000.[2] The sole question presented on appeal is whether the Government established that the value of the articles stolen exceeded $100.

On four separate occasions over a five-week period appellant stole aircraft pump parts known as "yokes" from an Army surplus warehouse.[3] The yokes stolen had been used by the Government and discarded as outworn. They were consigned to bins containing miscellaneous steel pump parts and were held for sale

1. "Whoever * * * steals * * * any * * * thing of value of the United States * * *

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

2. He was also convicted on two other counts under the same statute. Sentence on those counts was suspended, and the convictions are not being appealed.

3. The four counts respectively dealt with 100, 8, 32 and 30 yokes. The yokes apparently weigh about a pound each.

as steel scrap at prices ranging from six cents to ten cents a pound. On Government books they were no longer classified as pump parts, but as scrap.

The Government proved that the yokes cost the Government $88 each. On the authority of Fulks v. United States, 283 F.2d 259 (9th Cir. 1960), cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961), it contends that this establishes the value of the thefts as measured by the "cost price."

We disagree. *Fulks* dealt with unused surplus aircraft instruments held for sale as such.

We hold that where, as here, machine parts have been used by the Government to the point where their usefulness to the Government as such has been exhausted; and where they have been discarded and are held for disposal as scrap rather than as classified, segregated parts, they have lost their original identity and have been transformed into scrap. Consequently, the "cost price" of the *parts* is irrelevant, since in so far as the Government is concerned there is no longer anything to which that "cost price" can relate.

The fact that a discriminating thief, pawing over a scrap bin, can identify some of the scrap items as yokes and confine his theft to them does not change the result. Neither the thief's purpose nor potential retransformation or use alters the fact that the thing of value stolen from the Government constituted steel scrap.

The Government, then, has failed to prove that the value of the articles stolen under any count exceeded $100.

The sentence imposed is set aside and the matter is remanded for resentencing.

JAMES M. CARTER, Circuit Judge (dissenting).

I respectfully dissent.

The majority opinion does violence to the statute enacted by Congress, 18 U.S. C. § 641. The statute provides in part, that whoever steals a "thing of value of the United States" shall be guilty of a crime. [Emphasis added]. If the value is over $100 the crime is a felony but if the value of such property does not exceed the sum of $100 the crime is a misdemeanor.

In order to facilitate prosecutions for theft of government property, the Congress defined value in the section, "The word 'value' means face, par, or market value, or cost price, whether wholesale or retail, whichever is greater." [18 U.S. C. § 641]. Congress obviously knew what it was doing in defining value, since in 18 U.S.C. § 2311, defining value for the sections in the chapter covering foreign or interstate transportation of stolen property, there was no mention of *cost price* in the definition of value. The purpose of 18 U.S.C. § 2314, one of the sections in the chapter, was to penalize violators of state law who utilize or cause to be utilized, the channels of foreign or interstate commerce to transport stolen property. United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946), reh. den. 329 U.S. 834, 67 S.Ct. 628, 91 L.Ed. 706 (1947). The property involved in prosecutions under § 2314 is generally private property. Thus Congress made a distinction between government property and private property, in the type of proof required to prove value.

Merely because the Government had classified the aircraft pump parts known as "yokes" for sale as scrap does not mean that each part was no longer a thing of value. The majority states that the parts have "lost their original identity and have been transformed into scrap. Consequently the 'cost price' of the *parts* is irrelevant, since in so far as the Government is concerned there is no longer anything to which that 'cost price' can relate." In substance the majority has judicially amended or reformed the statute.

Even if the material is scrap, as contrasted with surplus property in Fulks v. United States, (9 Cir. 1960) 283 F.2d 259, cert. denied 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961), reh. den. 365 U.S. 864, 81 S.Ct. 824, 5 L.Ed.2d 827

(1961), it is still *a thing of value* and comes within the statute. In substance, the majority is saying that a yoke, as scrap, is no longer a thing of value.

In Bernhardt v. United States, (6 Cir. 1948) 169 F.2d 983, cert. den. 335 U.S. 903, 69 S.Ct. 407, 93 L.Ed. 437 (1949) the charge was under 18 U.S.C. § 641, and alleged the property was furnished for the use of the military or naval service of the United States. It was contended that the stolen goods had been declared surplus and reported as such by inventory to the War Assets Administration, and there segregated as available for sale to purchasers. However, the goods were still at the army depot and under army control, and the Military was still accountable until the goods physically left the confines of the depot. The court stated: "It is conceded that the stolen goods came originally within the classification of property furnished for the use of the military service of the United States. We think it was still within that classification so long as the army was responsible for it and that its theft or unlawful application were within the ambit of the statute alleged to have been violated." [page 985].

In our case, whether the goods were considered surplus as in *Fulks*, or scrap, the property was still within the control of the government and within the ambit of 18 U.S.C. § 641.

O'Malley v. United States, (1 Cir. 1955) 227 F.2d 332, cert. den. 350 U.S. 966, 76 S.Ct. 434, 100 L.Ed. 838 (1956), although not in point on our issue, is informative. There an attack was made on 18 U.S.C. § 641, that the use of the original cost price of the article stolen, rather than its value at the time of the theft, was repugnant to Amendment VIII of the Constitution which prohibited the imposition of excessive fines or of cruel and unusual punishment. The court regarded the argument as far fetched and frivolous, but pointed out that the maximum limits of fine and imprisonment were within the discretion of the trial court and the judge in his discretion might impose such fine and/or imprisonment as he saw fit. It concluded by stating that § 641 "would have been within the constitutional power of Congress even if it had not provided for a lower maximum penalty of fine or imprisonment in case the 'value' of the property, as defined, does not exceed the sum of $100.00." [page 336].

Thus, in our case the trial court on the convictions of felonies could have fined in an amount *up to $10,000* or imposed imprisonment for any time *up to ten years*. If the majority is concerned about the punishment imposed, the answer is (1) the court could have imposed only short jail sentences or small fines, and (2) it is not our function to review a sentence imposed which is within the statutory limits.

The majority decision will place an additional burden on the Government in prosecution of theft of government property, in that the Government will have to ascertain the market value, retail or wholesale, of scrap, and base its proof thereon.

*Fulks* cannot be distinguished on the ground that there *surplus*, and here *scrap* was the materials involved. *Fulks* controls this case and the judgment should be Affirmed.